1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

| | | |
|---|---|---|
| FERNANDO ARISTOBULO ACERO, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.    C04-1910RSL |
| | ) | (CR02-244RSL) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |
| | ) | |

16    Petitioner is a federal prisoner currently incarcerated at the Federal Correctional Institution at

17 Ashland, Kentucky.  Petitioner has filed a motion under 28 U.S.C. § 2255 seeking to vacate, set aside,

18 or correct his 2003 federal court sentence.  Respondent has filed a response opposing petitioner's

19 motion.  Petitioner has filed a reply brief in support of his motion.  Following a careful review of the

20 record, this Court concludes that petitioner's § 2255 motion should be denied.

21                                                    BACKGROUND

22    On July 18, 2002, petitioner was arrested at the Pacific Highway Port of Entry after United

23 States Customs inspectors and special agents discovered four bags containing over 50 kilograms of

24 marijuana in a tractor-trailer being driven by petitioner.  On July 24, 2002, the Grand Jury for the

25

REPORT AND RECOMMENDATION

26 PAGE - 1

1    Western District of Washington returned an indictment charging petitioner with possession of

2    marijuana with intent to distribute.  Petitioner was arraigned on the same date and was released on

3    bond.

4            In September 2002, while on bond, petitioner entered into an agreement with others to

5    distribute cocaine and he directed the purchase of a substantial quantity of cocaine.  On November 1,

6    2002, petitioner was arrested in Blaine, Washington on charges of conspiracy to distribute cocaine and

7    possession with intent to distribute cocaine.  On November 20, 2002, the Grand Jury returned a

8    superceding indictment charging petitioner with conspiracy to distribute in excess of 50 kilograms of

9    marijuana, possession with intent to distribute in excess of 50 kilograms of marijuana, conspiracy to

10   distribute 500 grams or more of cocaine, and possession with intent to distribute 500 grams or more of

11   cocaine.

12           On March 21, 2003, pursuant to a plea agreement entered into with the government, petitioner

13   pleaded guilty to the charge of possession with intent to distribute over 50 kilograms of marijuana and

14   to the charge of conspiracy to distribute 500 grams or more of a mixture and substance containing

15   cocaine.  The plea agreement contained a stipulation that the guilty plea included petitioner's

16   acknowledgment that the marijuana offense involved over 50 kilograms of marijuana and that the

17   cocaine offense involved over 500 grams of a mixture or substance containing cocaine.  The plea

18   agreement did not contain any more specific reference to quantity.

19           In advance of petitioner's sentencing, the U.S. Probation Office prepared a presentence report

20   in which it calculated a base offense level of 30.  This calculation was based upon reports which

21   indicated that petitioner's counts of conviction involved 67.1 kilograms of marijuana and 4,611 grams

22   of cocaine.  The Court accepted the U.S. Probation Office's calculation of the base offense level.  The

23   Court then applied upward adjustments for petitioner's commission of a second offense while on

24   pretrial release with respect to the original offense and for his role as a leader or organizer of the

25

26   REPORT AND RECOMMENDATION
     PAGE - 2

cocaine offense, and a downward adjustment for acceptance of responsibility.  Petitioner's total offense level was determined to be 34 and, with a criminal history category of 1, the sentence guideline range was determined to be 151 to 188 months imprisonment.  On September 4, 2003, petitioner was sentenced to 151 months imprisonment.

Petitioner did not file a direct appeal of his sentence.  He now seeks relief from his sentence under § 2255.  Petitioner argues in his § 2255 motion that the superceding indictment was multiplicitous and violated double jeopardy principles.  Petitioner also argues that the superceding indictment was jurisdictionally defective because it did not include aiding and abetting language.  Finally, petitioner argues that his offense level was incorrectly calculated and that his sentence violates the Sixth Amendment.

DISCUSSION

Multiplicitous Indictment

Petitioner asserts in his first two claims for relief that the superceding indictment was multiplicitous and violated double jeopardy principles.  Petitioner maintains that while he was charged with being a participant in two separate conspiracies – a conspiracy to distribute marijuana (Count 1) and a conspiracy to distribute cocaine (Count 3) – there was, in fact, only a single agreement with two objects.

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend V.  The Double Jeopardy Clause protects against three distinct abuses:  a second prosecution for the same offense after conviction, a second prosecution for the same offense after acquittal, and multiple punishments for the same offense.  *Schiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

REPORT AND RECOMMENDATION
PAGE - 3

1    While petitioner was charged in the superceding indictment with two counts of conspiracy, he

2  pleaded guilty to only one of those counts.  The second count was dismissed at the time of sentencing.

3  As petitioner was convicted of, and punished for, only one count of conspiracy, his double jeopardy

4  claim must fail.  Accordingly, this Court recommends that petitioner's § 2255 motion be denied with

5  respect to his first two claims for relief.

6                                        Jurisdictional Defects

7    Petitioner asserts in his third claim for relief that the indictment in his case was jurisdictionally

8  defective because the first three counts of the indictment did not contain aiding and abetting language.

9  Petitioner contends that aiding and abetting constitutes an essential element of each charged offense

10  and that the failure of the government to accurately track the statutory language of the charged

11  offenses rendered the indictment insufficient.

12    A review of the superceding indictment reveals that the language in the individual counts tracks

13  the statutory language set forth in the provisions under which petitioner was charged.  Petitioner cites

14  no authority for the proposition that aiding and abetting language is an essential element which must

15  be pled and, in fact, Ninth Circuit case law suggests to the contrary.  *See United States v. Armstrong*,

16  909 F.2d 1238, 1241 (9th Cir. 1990) ("Aiding and abetting is implied in every federal indictment for a

17  substantive offense.").

18    As petitioner has established no defect in the superseding indictment, this Court recommends

19  that petitioner's § 2255 motion be denied with respect to his third claim for relief.

20                                         Sentencing Issues

21    Petitioner's remaining claims all relate to the manner in which his sentence was calculated and

22  to the constitutionality of the sentence ultimately imposed.  Petitioner appears to argue, with respect to

23  each of his remaining claims, that he is entitled to relief under *Blakely v. Washington*, 124 S.Ct. 2531

24  (2004).

25

26  REPORT AND RECOMMENDATION
    PAGE - 4

1    In *Blakely*, the Supreme Court addressed a provision of the Washington Sentence Reform Act

2  which permitted a judge to impose a sentence above the statutory range upon finding, by a

3  preponderance of the evidence, certain aggravating factors which justified the departure.  *Id*. at 2535.

4  The trial court relied upon this provision to impose an exceptional sentence which exceeded the top

5  end of the standard range by 37 months.  *Id*.  The Supreme Court held that this exceptional sentence

6  violated the Sixth Amendment because the facts supporting the exceptional sentence were neither

7  admitted by petitioner nor found by a jury.  The Court explained that "the 'statutory maximum' for

8  *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts*

9  *reflected in the jury verdict or admitted by the defendant*."  *Id*. at 2537 (emphasis in original).

10    While petitioner's § 2255 motion was pending, the Supreme Court issued its ruling in *United*

11  *States v. Booker*, 125 S.Ct. 738 (2005).  In *Booker*, the Supreme Court addressed *Blakely* in the

12  context of the Federal Sentencing Guidelines and concluded that the Sixth Amendment, as construed

13  in *Blakely*, does in fact apply to the Federal Sentencing Guidelines.  *Id*. at 745. The Supreme Court

14  remedied the Sixth Amendment problem by excising the provision of the Sentencing Reform Act

15  which made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus rendering the guidelines

16  effectively advisory.  *Id*. at 764-5.

17    The question this Court must address is whether the rights recognized in *Blakely*, and now in

18  *Booker*, apply retroactively on collateral review.  The Supreme Court did not address the retroactivity

19  question in either *Blakely* or *Booker*.[1]  However, the Supreme Court's recent decision in *Schriro v.*

20

21        [1]  The Court notes that the Ninth Circuit has yet to address this issue directly.  In *United States*

22  *v. Ameline*, 2005 WL 350811 (9th Cir. Feb. 9, 2005), the Ninth Circuit concluded that *Booker*, and
   therefore *Blakely*, applies to criminal cases pending on direct appeal at the time the *Booker* decision

23  was rendered.  *Ameline*, 2005 WL 350811, at *1.  And, in *Cook v. United States*, 386 F.3d 949 (9th
   Cir. 2004), the Ninth Circuit concluded that *Blakely* does not apply retroactively to second or

24  successive § 2255 motions.  However, the Ninth Circuit has not yet spoken on the issue of whether
   *Blakely* or *Booker* apply retroactively to cases on initial collateral review.

25

   REPORT AND RECOMMENDATION
26  PAGE - 5

*Summerlin*, 124 S.Ct. 2519 (2004) is essentially dispositive of the retroactivity question.  In *Schriro*, the Supreme Court held that its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), which, like *Blakely* and *Booker*, applied *Apprendi* principles, is not retroactive on collateral review.  *Schriro*, 124 S.Ct. at 2526-27.

In *Ring*, the Supreme Court had held, in reliance on *Apprendi*, that the Sixth Amendment gave a defendant the right to a jury determination of all aggravating factors which may lead to the imposition of the death penalty.  *Ring*, 536 U.S. at 609.  In *Schriro*, the Supreme Court then analyzed the rule set forth in *Ring* under *Teague v. Lane*, 489 U.S. 288 (1989), to determine if the rule applied retroactively to cases already final on direct review.  The Supreme Court concluded that *Ring's* holding was properly classified as procedural because it did not alter the range of conduct that Arizona law subjected to the death penalty.  Instead, "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment."  *Schriro*, 124 S.Ct. 2523.   The Supreme Court went on to state that "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules."  *Id*.

There is no meaningful distinction between the type of constitutional rule announced in *Ring* and the type of constitutional rule announced in *Blakely* and *Booker*.  Accordingly, *Blakely* and *Booker* should be treated as procedural decisions for purposes of retroactivity analysis.

New constitutional rules of criminal procedure generally do not apply retroactively to cases on collateral review.  However, retroactive effect is given to a small set of  "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Schriro*, 124 S.Ct. at 2524 (quotation marks and citations omitted).  In *Schriro*, the Court acknowledged that "[t]he right to jury trial is fundamental to our system of criminal procedure," but concluded that judicial factfinding does not seriously diminish the accuracy of criminal proceedings.  *Id*. at 2526.  Thus, the

REPORT AND RECOMMENDATION
PAGE - 6

1  Court held that the constitutional rule announced in *Ring* did not constitute a "watershed rule of

2  criminal procedure" to be applied retroactively to cases already final on direct review. *Id.*

3  Based upon the Supreme Court's reasoning in *Schriro*, this Court concludes that the constitutional

4  rule announced in *Blakely*, and more recently in *Booker*, does not constitute a "watershed rule of

5  criminal procedure" and therefore does not apply retroactively on collateral review. *See Schriro*, 124

6  S. Ct. at 2526-27. The Court notes that this conclusion is consistent with the conclusions reached by

7  the Seventh and Eleventh circuits on this issue. *See McReynolds v. United States*, 2005 WL 237642,

8  at *1 (7th Cir. Feb. 2, 2005); *Varela v. United States*, 2005 WL 367095, at *2-3 (11th Cir. Feb. 17,

9  2005).

10        As this Court concludes that *Booker* does not apply retroactively to § 2255 cases on collateral

11  review, this Court recommends that petitioner's § 2255 motion be denied with respect to his

12  sentencing claims.

13                        <u>CONCLUSION</u>

14        As none of petitioner's claims has merit, this Court recommends that petitioner's § 2255

15  motion be denied. A proposed order accompanies this Report and Recommendation.

16        Dated this  <u>8th</u>  day of March 2005.

17

18                              /s/ Monica J. Benton
                               MONICA J. BENTON
19                             United States Magistrate Judge

20

21

22

23

24

25

REPORT AND RECOMMENDATION
26  PAGE - 7